# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02088-SBP

MIDLAND NATIONAL LIFE INSURANCE COMPANY,

     Plaintiff,

v.

JACQUELINE JOHNSON,
RUEBEN JOHNSON, and
CASSIE EARHART-CARNEY,

     Defendants.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

This matter is before the court on Plaintiff Midland National Life Insurance Company ("Midland")'s Unopposed Motion for Interpleader of Proceeds, Discharge, Dismissal with Prejudice, and Attorneys' Fees (the "Motion"). ECF No. 38. The parties have consented to proceed before a United States Magistrate Judge for all proceedings. *See* ECF No. 23; *see also* Order of Reference, ECF No. 24.

Having now considered the Motion, the entire docket, and the applicable law, the court respectfully **GRANTS** the Motion and **ORDERS** that the proceeds of the insurance policy at issue, including accrued interest and minus $12,500 in Midland's attorney's fees and costs, be deposited in the court's registry; that Midland be discharged from all liability as to the proceeds of the insurance policy; and that Midland be dismissed with prejudice from this lawsuit upon deposit of the funds.

A.      Background

On August 31, 1984, David F. Earhart applied for a life insurance policy through

Midland, an Iowa corporation with its principal place of business in West Des Moines, Iowa. *See*

ECF No. 1 ¶¶ 1, 12; *see also* Initial Beneficiary Declaration and Application, ECF No. 1-1 at 5.[1]

In the application, Mr. Earhart listed himself as the insured, with his wife, Dona B. Earhart,

named as primary beneficiary, and Jacqueline Johnson and Rueben Johnson named as contingent

beneficiaries.[2] *Id.* ¶ 13; *see also* ECF No. 1-1 at 3. On September 17, 1984, Midland issued a

$100,000 life insurance policy to Mr. Earhart (the "Policy"). ECF No. 1 ¶ 14; ECF No. 1-2 (copy

of the Policy).

Dona B. Earhart passed away on July 29, 2012. ECF No. 1 ¶ 15. David F. Earhart

followed his wife in death on November 14, 2021. *Id.* ¶ 16. More than two years later, on

February 7, 2024, Defendant Cassie Earhart-Carney—the daughter of David and Dona—notified

Midland of her father's passing. *Id.* ¶ 17. On February 20, 2024, Midland received a letter from

Ms. Earhart-Carney stating that she was contesting the beneficiary designation of Jacqueline and

Rueben Johnson, asserting that "it was her father's intent for Defendant Cassie Earhart-Carney or

his grandchildren to be the beneficiary" under the Policy. *Id.* ¶ 18. Ms. Earhart-Carney

simultaneously submitted to Midland an incomplete "Beneficiary Change Request" form

referencing a date of September 3, 2013, ECF No. 1-5 at 12, but there is no dispute that this form

was never submitted to Midland. ECF No. 1 ¶ 18.

---

[1] Midland states that the application was made on September 14, 1984, but the form bears a date
of August 31, 1984. In any event, that is not a consequential point for purposes of the disposition
of the Motion.

[2] The court refers to Ms. Earhart-Carney and the Johnsons collectively as "Defendants."

On February 22, 2024, Defendants Jacqueline and Rueben Johnson—the named contingent beneficiaries under the Policy who are David Earhart's sister-in-law and brother-in-law—submitted "Claimant Statements" to Midland. *Id.* ¶¶ 19-20; *see also* ECF Nos. 1-6, 1-7 (copies of Claimant Statements for the Johnsons). On April 18, 2024, Midland learned that the Johnsons were contesting the beneficiary designation of Ms. Earhart-Carney and that "the parties were unable to reach an agreement regarding their competing claims for the death benefit." *Id.* ¶ 21.

Midland asserts that it has been unable to determine the validity of these adverse and competing claims and wishes to avoid "the possibility of multiple liability on a single obligation as well as incidental costs" should it distribute the Policy proceeds to the incorrect party. *Id.* ¶ 25. Consequently, on July 29, 2024, Midland initiated this action for interpleader against Defendants "to avoid multiple liabilities and unnecessary suits and costs," *id.* ¶ 27, seeking the court's determination of the correct beneficiary of the Policy proceeds. In the instant Motion, Midland requests the court's permission to deposit the Policy proceeds, plus interest, in the court registry to enable the court to determine the proper recipient of the funds. *Id.* Midland also seeks discharge from all liability associated with the distribution of proceeds under the Policy, dismissal from this action with prejudice, and attorney's fees and costs in the amount of $12,500. *Id.* ¶ 28; *see also* ECF No. 38 at 3.

### B.    Analysis

#### 1.    Appropriateness of Interpleader

"An interpleader suit is a procedure originating in equity that allows a stakeholder to interplead into an action any parties with claims that might otherwise expose the stakeholder to

multiple liability." *Clausen as Tr. of Brett M. Partridge Tr. v. Protective Life Ins. Co.*, No. 2:22-cv-00757-TC-DAO, 2023 WL 4137370, at *2 (D. Utah June 22, 2023) (citation omitted). The purpose of an interpleader action is to allow the plaintiff who is holding funds "to put the money or other property in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves the ownership of the fund in court." *Am. Fam. Mut. Ins. Co. v. Brown*, No. 06-1339-JTM, 2007 WL 1586125, at *1 (D. Kan. 2007) (quoting *Comm. Union Ins. Co. v. United States*, 999 F.2d 581, 583 (D.C. Cir. 1993)).

"An interpleader action typically proceeds in two stages. During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit, whether the stakeholder is actually threatened with double or multiple liability, and whether any equitable concerns prevent the use of interpleader. During the second stage, the court determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial." *Transamerica Life Ins. Co. v. Talley*, No. 14-cv-01412-PAB-CBS, 2015 WL 5093206, at *6 (D. Colo. Aug. 31, 2015) (quoting *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007)) (citation modified). The instant Motion asks the court to perform its first-stage analysis, with the second-stage determination of the respective rights of the adverse claimants to be made following the bench trial set to commence on April 27, 2026. *See* ECF No. 29 at 9.

### a. Jurisdiction

The court first must confirm that it has jurisdiction over this action. There are two procedural mechanisms for pursuing an interpleader action in federal court.

First, the court has jurisdiction to entertain an interpleader action under the doctrine of

"statutory interpleader" set forth in 28 U.S.C. § 1335, which requires "[t]wo or more adverse claimants of diverse citizenship," an amount in controversy of $500 or more, and a deposit in the court registry by the plaintiff of the amount in dispute. The "minimal diversity" imposed under § 1335 requires that at least two claimants be of diverse citizenship. *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1308 (10th Cir. 2022) (explaining that "[a] statutory-interpleader action requires only minimal diversity—'that is, diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens'") (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530 (1967)).

Second, "rule interpleader" under Federal Rule of Civil Procedure 22 "functions much like joinder rules and can be invoked only when federal jurisdiction is otherwise established." *AmGuard Ins. Co. v. SG Patel and Sons II LLC*, 999 F.3d 238, 244 (4th Cir. 2021) (citation omitted). Thus, "an interpleader brought under Rule 22 must fall within one of the general statutory grants of federal jurisdiction." *Comm. Union Ins. Co.*, 999 F.2d at 584. In a typical case, rule interpleader is invoked under the federal diversity jurisdiction statute. *See* 28 U.S.C. § 1332 (requiring complete diversity between all plaintiffs and defendants and an amount in controversy of $75,000 or more); *see also Clausen*, 2023 WL 4137370, at *2 ("Jurisdiction under rule interpleader is based on the general jurisdiction statutes applicable to civil actions in the federal courts—that is, federal courts gain jurisdiction over an action either due to the existence of a federal question or because the suit involves a 'matter in controversy' between 'citizens of different states' where the amount in controversy exceeds the value of $75,000.") (internal citations omitted).

In its complaint, Midland seemingly invokes both statutory and rule interpleader. On the

one hand, Midland describes this case as a "statutory interpleader action under 28 U.S.C. § 1335." ECF No. 1 ¶ 9. On the other, Midland specifically references Rule 22. *Id.* ¶ 11 ("Pursuant to 28 U.S.C. § 1335, Fed. R. Civ. P. 22, and Fed. R. Civ. P. 67, Midland will hereafter file a Motion to Deposit Sum Of Money into the registry of the Court, as well as a Motion for Interpleader Of Proceeds, Discharge, Dismissal With Prejudice, And Attorney's Fees and Costs, seeking leave to deposit the contractual obligations due under the Policy into the registry of this Court."); *see also* Civil Cover Sheet, ECF No. 1-8 (checking "Diversity" under "Basis of Jurisdiction," and listing "plaintiff" as "incorporated and principal place of business in another state" and "defendant" as "citizen of another state"). Yet in the instant Motion, Midland mentions only § 1335. ECF No. 38 at 1; *see also id.* (no reference to Rule 22). Notwithstanding the lack of clarity on Midland's part, the court is obliged to satisfy itself that it possesses jurisdiction under either the interpleader statute itself or pursuant to the grant of jurisdiction conferred in § 1332. *See Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver*, 628 F.2d 1289, 1301 (10th Cir. 1980) ("A federal court must in every case, and at every stage of the proceeding, satisfy itself as to its own jurisdiction, and the court is not bound by the acts or pleadings of the parties.").

*Section 1335*. Here, it is apparent from the record that there is no diversity—not even of a "minimal" nature—between the adverse claimants, all of whom are citizens of Colorado. ECF No. 1 ¶¶ 5-7 (asserting that Ms. Earhart-Carney and the Johnsons are "citizen[s] and domiciliar[ies] of Greeley, Colorado"). The requisite diversity under § 1335 therefore is lacking.

*Rule 22*. Even though jurisdiction must be rejected on the basis of § 1335, the court may consider whether Midland has satisfied the interpleader requirements under Rule 22 and its

jurisdictional underpinning, § 1332. As one Circuit Court of Appeals has recently explained, "[a] district court may consider a request for interpleader under *either* method of interpleader—Rule 22 or § 1335—'even if the complaint asserts the wrong one, so long as the complaint can be construed to confer jurisdiction under one or the other.'" *AmGuard Ins. Co.*, 999 F.3d at 248 (in an interpleader action brought under § 1335, finding that the district court abused its discretion and committed reversible error in not considering the application of Rule 22 after it dismissed the statutory interpleader claim: "§ 1332 also provided the district court with jurisdiction to resolve AmGuard's declaratory judgment claim, yet the court dismissed the entire action without addressing why it did not have jurisdiction under § 1332") (quoting 4 James Wm. Moore et al., *Moore's Federal Practice* § 22.04[1] (3d ed. 2020)). Accordingly, even if Midland has been somewhat less than explicit in its invocation of Rule 22 as the basis for this interpleader action, the court nevertheless may construe the case as one for "rule interpleader" under Rule 22. *See id.*; *see also Truck-A-Tune, Inc. v. Re*, 23 F.3d 60, 62 (2d Cir. 1994) (agreeing with the district court's "*sua sponte* decision to convert the action to rule interpleader," and finding that, "[b]ecause the stakeholder's citizenship is diverse to that of all the defendants, and the amount in controversy exceeds $50,000, the Court has subject matter jurisdiction under the diversity statute") (citations omitted).

Considering then the remedy in interpleader provided under Rule 22, the court finds that, at the time of filing of this lawsuit, diversity jurisdiction under § 1332 existed. The mandate for diversity between Midland, the Iowa-citizen stakeholder, and Ms. Earhart-Carney and the Johnsons, the Colorado-citizen adverse claimants, was satisfied, as was the $75,000 amount-in-controversy requirement because the amount of the Policy proceeds in dispute is $100,000. *See,*

7

*e.g.*, *Woodcrest United Methodist Church v. Allianz Life Ins. Co. of N. Am.*, No. 1:10CV194, 2010 WL 11530298, at *3 (E.D. Tex. Sept. 16, 2010) ("[T]he claimants in this case, Woodcrest and the Estate, are Texas citizens. The stakeholder, Allianz, is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota and is therefore a Minnesota citizen. The total value of the annuities at issue in this case exceeds $75,000. Therefore, the court has diversity jurisdiction over the interpleader action because Allianz and Woodcrest are citizens of different states, Allianz and Mr. Daniels's Estate are citizens of different states, and the amount in controversy under the annuity policies exceeds $75,000.") (citation modified).

The ultimate jurisdictional question therefore becomes whether Midland's dismissal from this suit—leaving the two nondiverse claimants in the litigation—deprives the court of jurisdiction under rule interpleader. Another judge in this District recently has thoroughly analyzed this question and determined that jurisdiction continues. *See Everlake Life Ins. Co. v. Webb*, No. 25-cv-01283-PAB-KAS, 2026 WL 544293, at *3 (D. Colo. Feb. 23, 2026). As the *Everlake* court recognized, "[s]ister courts facing this issue have analyzed [the existing] jurisprudence and held that, so long as the stakeholder and claimants are diverse at the time of filing the complaint, the court may nonetheless retain jurisdiction over the case even after the stakeholder is dismissed." *Id.* (citing *State Farm Life Ins. Co. v. Densmore*, No. CIV-23-10-RAW-GLJ, 2023 WL 6534998, at *2 (E.D. Okla. Aug. 7, 2023); *Clausen*, 2023 WL 4137370, at *3)). The court in *Everlake* found that jurisdiction persisted following the dismissal of the stakeholder, *see* 2026 WL 544293, at *3, and this court will follow that well-reasoned analysis. This court, like Judge Starnella in *Everlake*, "is satisfied that it retains Rule 22 interpleader jurisdiction over this action." *See id.*; *see also Mata v. Lynch*, 576 U.S. 143, 150 (2015)

(recognizing that "when a federal court has jurisdiction, it also has a virtually unflagging obligation to exercise that authority") (citation modified).

### b.    Other First-Stage Considerations

Having satisfied itself of its jurisdiction—and confirmed that jurisdiction is not lost even if Midland, the only party of diverse citizenship, is dismissed from the action—the court next finds that Midland has shown that it is "actually threatened with double or multiple liability." *See Talley*, 2015 WL 5093206, at *6 (quotation omitted); *see also, e.g.*, *Primerica Life Ins. Co. v. Palei*, No. 2:24-CV-00272-HCN-DBP, 2025 WL 2240716, at *2 (D. Utah Aug. 6, 2025) ("The primary test for determining the propriety of interpleading the adverse claimants and discharging the stakeholder is whether the stakeholder legitimately fears multiple vexation directed against a single fund.") (citation modified). Midland has alleged that both Ms. Earhart-Carney and the Johnsons have claimed that they are the proper beneficiaries under the Policy and entitled to the full Policy proceeds. ECF No. 1 ¶¶ 18-21. Indeed, both groups of Defendants have affirmatively verified that point in seeking summary judgment in their favor. ECF No. 35 at 2 (arguing that "the Court should enter summary judgment in favor of the Johnsons, order Midland to pay the death benefit proceeds, with interest as required by the policy and the law at the rate of 7.4%, into the registry of the Court, and then order the clerk to pay the death-benefit proceeds with interest to the Johnsons"); ECF No. 36 at 24 (asserting that "[u]nder Colorado's substantial-compliance doctrine, the Court should treat the change [of beneficiary] as effective, declare Cassie Earhart-Carney the lawful beneficiary of the Midland policy, direct Midland to disburse

the proceeds to her, and dismiss the Johnsons' competing claims").[3]

On this record, Midland has shown that it reasonably fears exposure to claims from multiple parties who assert entitlement to the same life insurance policy proceeds, thus rendering their interests adverse to one another. It therefore has properly invoked interpleader. *See, e.g.*, *Everlake Life Ins. Co.*, 2026 WL 544293, at *3 (finding that plaintiff insurance company properly invoked interpleader pursuant to Rule 22 where adverse claimants represented in the litigation that they were entitled to the proceeds of a life insurance policy).

### 2.    Deposit of the Proceeds and Discharge of Midland

As previously noted, Midland requests the court's permission to deposit the Policy proceeds, plus interest, in the court registry to enable the court to determine the proper recipient of the funds. ECF No. 38 at 3. Midland also seeks discharge from all liability associated with the distribution of proceeds under the Policy, dismissal from this action with prejudice, and attorney's fees and costs in the amount of $12,500. *Id.*. Midland's request for relief is unopposed.

The court has found that interpleader is properly invoked, and so orders that Midland's request to deposit the Proceeds with interest into the court registry—minus $12,500 for its attorney's fees and costs—is **granted**. The court further **orders** that Midland shall be **dismissed** from this action with prejudice and with no further liability to Defendants once the funds at issue are deposited into the court registry. *See Metro. Life Ins. Co. v. Asbell*, No. 21-CV-00332-RAW, 2023 WL 1967299, at *3 (E.D. Okla. Feb. 13, 2023) ("If interpleader is appropriate, the court may allow the plaintiff to deposit the funds at issue into the registry of the court. The court may

---

[3] This court found that genuine disputes of material fact precluded judgment as a matter of law for either party and denied both motions for summary judgment. ECF No. 45.

then discharge the plaintiff and enjoin the parties from prosecuting any other proceeding related to the same subject matter.") (citation modified).

## CONCLUSION

Consistent with the foregoing analysis, it is respectfully

**ORDERED** that Plaintiff Midland National Life Insurance Company's Unopposed Motion for Interpleader of Proceeds, Discharge, Dismissal with Prejudice, and Attorneys' Fees (ECF No. 38) is **GRANTED**. Plaintiff Midland National Life Insurance Company shall deposit the policy proceeds ($100,000), including any accrued interest and minus $12,500 in attorney's fees and costs, into the court registry. It is further

**ORDERED** that Plaintiff Midland National Life Insurance Company is discharged from any liability concerning the proceeds of policy number *****5814, owned by David F. Earhart. It is further

**ORDERED** that upon making the referenced deposit, Plaintiff Midland National Life Insurance Company shall be dismissed from this action with prejudice and Defendants shall be prohibited from taking any further action on the Policy against Plaintiff.

DATED: April 23, 2026                          BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

11